**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BLUEFIELD DIVISION**

| | | |
|---|---|---|
| **DERRIK ZACHERY HARTWELL,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 1:12-05447** |
| | ) | |
| **CAROLYN W. COLVIN,** | ) | |
| **Acting Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**PROPOSED FINDINGS AND RECOMMENDATION**

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for child's insurance benefits based on disability and Supplemental Security Income (SSI), under Title XVI of the Social Security Act. By Standing Order entered September 21, 2012 (Document No. 4.), this case was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit Proposed Findings of Fact and Recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are the parties' cross-Motions for Judgment on the Pleadings (Document Nos. 14 and 15.), and Plaintiff's Response. (Document No. 16.)

Claimant received SSI benefits based on disability as a child. (Tr. at 10.) Upon turning eighteen years of age, and on September 23, 2010, it was determined that Claimant no longer was disabled as of September 1, 2010. (Tr. at 10, 54, 66-68.) This determination was upheld on reconsideration after a disability hearing by a State agency Disability Hearing Officer. (Tr. at 10, 55, 56-65, 78-89.) Claimant filed a written request for hearing on March 10, 2011. (Tr. at 10, 96-99.)

Claimant also filed an application for child's insurance benefits on July 7, 2010, alleging disability beginning on April 17, 2007, due to depression, anxiety, and bipolar disorder. (Tr. at 10,

161-64, 214.) The claim was denied initially and on reconsideration. (Tr. at 10.) A hearing was held on November 29, 2011, before the Honorable Geraldine H. Page. (Tr. at 24-53.) By decision dated December 13, 2011, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 10-23.) The ALJ's decision became the final decision of the Commissioner on July 25, 2012, when the Appeals Council denied Claimant's request for review. (Tr. at 1-5.) Claimant filed the present action seeking judicial review of the administrative decision on September 14, 2012, pursuant to 42 U.S.C. § 405(g). (Document No. 2.)

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(I), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2011). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v.

2

Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience.  20 C.F.R. §§ 404.1520(f), 416.920(f) (2011). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he had not engaged in substantial gainful activity since the alleged onset date, April 17, 2007. (Tr. at 13, Finding No. 3.) Under the second inquiry, the ALJ found that Claimant suffered from the severe impairments of "bipolar disorder; social anxiety disorder; and obesity." (Tr. at 13, Finding No. 4.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 13, Finding No. 5.) The ALJ then found that Claimant had a residual functional capacity ("RFC") to perform work at all exertional levels, with the following non-exertional limitations:

> [The [C]laimant is limited to simple, routine, repetitive, and unskilled tasks involving no interaction with the general public and no more than superficial interaction with coworkers and supervisors.

(Tr. at 15, Finding No. 6.) At step four, the ALJ found that Claimant had no past relevant work. (Tr. at 21, Finding No. 7.) On the basis of testimony of a Vocational Expert ("VE") taken at the administrative hearing, the ALJ concluded that Claimant could perform jobs such as an automobile detailer, a landscaper, and a laundry laborer, at the medium and unskilled levels. (Tr. at 21-22, Finding No. 11.) On this basis, benefits were denied. (Tr. at 22, Finding Nos. 12-13.) For purposes of Claimant's claim for child's insurance benefits, the ALJ found that Claimant had not been under a disability from his eighteenth birthday through the date of the decision. (Tr. at 22, Finding No. 12.)

For purposes of Claimant's continuing eligibility for SSI, upon attaining age eighteen, the ALJ found that Claimant's disability ended September 1, 2010, and that he had not become disabled again since that date. (Tr. at 22, Finding No. 13.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was born on July 28, 1992, and was 26 years old at the time of the administrative hearing, March 12, 2008. (Tr. at 21, Finding No. 8.) Claimant had at least a high school education, and was able to communicate in English. (Tr. at 21, Finding No. 9; 28.) Claimant has no past employment. (Tr. at 21, Finding No. 7; 29; 48.)

4

The Medical Record

The Court has reviewed all the evidence of record, including the medical evidence, and will discuss it below in relation to Claimant's arguments.

***Naasreen Riaz Dar, M.D.***:

The record contains Claimant's treatment records with Dr. Dar from February 16, 2004, through April 9, 2007. (Tr. at 316-20.) It was noted on February 16, 2004, that Claimant was sad, depressed, angry, and was not doing well in school. (Tr. at 316.) He sabotaged himself by not doing his work, received detention, and had become a problem. (Id.) On March 15, 2004, Claimant was sad and depressed and it was noted that he was a bright young man but that he sabotaged himself in dealing with his feelings for his father who was dependent on drugs. (Id.) Anger management was discussed on May 17, 2004, and Claimant cancelled his appointments on September 13 and October 2, 2006. (Tr. at 317.) On April 9, 2007, Claimant reported poor sleep and that he did not attend school regularly. (Tr. at 318.) On mental status exam, Claimant was cooperative, but appeared anxious, tense, irritable, angry, and exhibited poor eye contact. (Tr. at 319.) His thought processes were goal directed, he reported no obsessions or delusions, and he denied suicidal or homicidal ideation. (Id.) He was assessed a GAF of 40. (Tr. at 320.)

***Appalachian Psychiatric Services:***

Claimant treated at Appalachian Psychiatric Services from November 2007, through February 2008, primarily with Dr. Safiullah Syed, M.D., for bipolar disorder and social anxiety disorder. (Tr. at 322-25.) On November 29, 2007, it was noted that he had been recently admitted to Appalachian Hospital for mood swings. (Tr. at 324.) His mother reported that Abilify was working for the mood swings and anger problems. (Id.) Dr. Syed continued the Abilify 10mg and added Trazodone 50-100mg to help him sleep. (Id.) On February 21, 2008, Claimant was seen on follow-up and reported that he was doing better as far as mood swings were concerned and indicated that only rarely did he

5

get angry. (Tr. at 325.) He reported quite a bit of social anxiety and that he did not go out. (Id.) He tried to return to school, but did not do well and requested to continue on homebound. (Id.) Dr. Syed continued his medications and added Cymbalta to better help with anxiety issues. (Id.)

On June 14, 2010, nearly two years since he was last seen by Dr. Syed, Claimant returned and reported that although his medications helped, he was routinely non-compliant and experienced mood swings. (Tr. at 282-83.) He had finished his GED classes. (Tr. at 282.) On examination, Claimant was alert and oriented, appeared to be calm, had coherent thought processes, had a restricted affect, showed fairly intact memory, and had intact judgment and insight. (Tr. at 283.) Dr. Syed diagnosed bipolar affective disorder NOS, social anxiety disorder, and assessed a GAF of 55.[1] (Id.) He restarted Abilify 10mg, Trazadone 100mg, and Ativan .5mg, and scheduled counseling. (Id.) Dr. Syed referred Claimant for psychological testing to assess his level of intellectual, academic, and emotional functioning. (Tr. at 340-43.) On June 18, 2010, Edward A. Jones, M.A., a licensed psychologist, conducted a mental status examination and psychological testing. (Id.) On examination, Mr. Jones noted that Claimant interacted appropriately and established rapport easily. (Tr. at 340.) Claimant exhibited clear speech, relevant and coherent verbalizations, he spontaneously generated conversation, he maintained good eye contact and displayed a sense of humor, presented with an elevated mood and broad affect, had organized thought content and processes, had age-expected judgment, had intact memory and concentration, and had moderately impaired attention. (Id.) Claimant reported that he obtained his GED in 2009, and left school in the eighth grade. (Id.) He described his grades when in school as having been below average with no particular difficulty in either reading or math and he did not

---

[1] The Global Assessment of Functioning ("GAF") Scale is used to rate overall psychological functioning on a scale of 0 to 100. A GAF of 51-60 indicates that the person has "[m]oderate symptoms . . . or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* ("DSM-IV") 32 (4th ed. 1994).

receive any special education services. (Id.) He repeated the sixth grade. (Id.) Claimant did not possess a valid driver's license and was unemployed. (Id.)

Dr. Jones noted an average range score of 106 on the Kaufman Brief Intelligence Test, Second Edition ("KBIT2 IQ"), and scores of 120 in word reading, which was superior; 104 in sentence comprehension, which was average; and 81 in math computation, which was below average on the Wide Range Achievement Test - 4 ("WRAT-4"). (Tr. at 341.) On the Beck Youth Inventories, Second Edition ("BYI-2"), Claimant's responses suggested that he liked himself and was always happy to be him. (Tr. at 341-42.) He seemed to have confidence in his intellectual capabilities, personal effectiveness, and social abilities. (Tr. at 342.) He further seemed to compare favorably with his peers. (Id.) Claimant reported frequent sad mood, crying spells, and feelings of emptiness. (Id.) Mr. Jones noted that his self-reported symptoms of anxiety were in the mildly elevated range and his self-reported symptoms of anger and disruptive behavior were in the average range. (Id.) Mr. Jones diagnosed bipolar disorder, social phobia, and assessed a GAF of 56. (Id.)

### *Tonya McFadden, M.A. - Adult Mental Profile*:

Claimant presented to Ms. McFadden, a licensed psychologist, on August 3, 2010, for assessment of his mental profile. (Tr. at 284-89.) Claimant reported that social anxiety affected most of his life. (Tr. at 285.) He stated that he was unable to go anywhere and when exposed to others, he experienced his heart racing, felt others staring at him and laughing at him, felt weak in the knees around others, had difficulty with shaking, and felt panic symptoms when around others. (Id.) He also reported mood swings and stated that certain things made him snap. (Id.) He reported depression, difficulty sleeping, and thoughts about death. (Id.) On mental status exam, Claimant was pleasant and cooperative, exhibited relevant and coherent speech, was oriented, appeared anxious and restricted, had a normal stream of thought, reported instances of feeling like people were laughing at him, had normal judgment and memory, and had normal concentration, persistence, and pace. (Tr. at 286-87.)

Ms. McFadden opined that Claimant's social functioning was moderately deficient. (Tr. at 287.) She diagnosed social anxiety disorder and bipolar II disorder, and opined that Claimant's prognosis was poor. (Tr. at 287-88.)

### *Jeff Boggess, Ph.D. - Mental RFC Assessment & Psychiatric Review Technique*:

On September 22, 2010, Dr. Boggess, a state agency physician, completed a form mental RFC assessment on which he opined that Claimant was moderately limited in his ability to interact appropriately with the general public and to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (Tr. at 290-92.) He opined that Claimant was not significantly limited in the remaining eighteen mental work-related activities. (Id.) Dr. Boggess opined that Claimant retained "the ability for work activity with limited contact with the general public." (Tr. at 292.)

Dr. Boggess also completed a form Psychiatric Review Technique, on which he opined that Claimant's bipolar disorder and social anxiety disorder resulted in mild limitations in maintaining activities of daily living, concentration, persistence, or pace; moderate limitations in maintaining social functioning; and no episodes of decompensation each of extended duration. (Tr. at 293-307.)

Dr. Holly Cloonan, Ph.D., affirmed Dr. Boggess' opinion as written on December 11, 2010. (Tr. at 314.)

### *Southern Highlands Community Mental Health Center*:

Claimant underwent an initial intake assessment at Southern Highlands on November 8, 2010. (Tr. at 309-11.) Claimant reported that he did not know that he was going there and that his mother informed him moments before he arrived. (Tr. at 310.) Claimant and his mother agreed that his medications need adjusted because he was too sedated. (Id.) Claimant reported poor impulse control, verbal aggression, emotional lability, aggression, racing thoughts, panic attacks, not wanting to be alone, not wanting to leave his home, irregular sleeping habits, hyperactivity, manic or hypomanic

8

moods, mild paranoia, and crying spells. (Id.) Claimant reported that he had a girlfriend for over three years. (Id.) It was noted that Claimant was cooperative, had an anxious mood with consistent eye contact, had fair judgment and insight, and no significant memory impairment was reported. (Tr. at 311.)

Ted Webb, PA-C, conducted a psychological evaluation of Claimant on December 16, 2010. (Tr. at 346-50.) Claimant reported occasional depression, that his moods were up and down, and that he used to have fits of rage but that he had not had one in a long time. (Tr. at 346.) Mental status exam revealed a depressed mood and broad affect, normal rate of speech, rational thought content, intact memory, normal attention, that he was withdrawn, intact insight and judgment, and average intelligence. (Tr. at 349-50.) Mr. Webb diagnosed bipolar disorder, generalized anxiety disorder, personality disorder NOS, and assessed a GAF of 55. (Tr. at 350.) He opined that his prognosis was stable and prescribed Abilify 15mg, Ambien 10mg, and Buspar 10mg. (Id.)

### *Teresa E. Jarrell, M.A. - Psychological Evaluation*:

Ms. Jarrell conducted a psychological evaluation and testing on June 28, 2011. (Tr. at 376-82.) Mental status exam revealed that Claimant was alert, attentive, and cooperative; he presented with a mildly anxious mood and restricted affect; his speech was normal in rate and volume; his thought processes were linear and goal directed; thought content was relevant to the questions asked; he was oriented in all spheres; immediate and recent memory was normal; remote memory was mildly deficient; concentration was moderately deficient; and insight and judgment were within normal limits. (Tr. at 379.) The Personality Assessment Inventory ("PAI") was administered as a means of assessing Claimant's personality traits and emotional functioning. (Tr. at 379-80.) Ms. Jarrell noted that Claimant's score was invalid. (Tr. at 380.) She also administered the Negative Impression evaluation which resulted in a high score and suggested that Claimant attempted to portray himself in an especially negative manner. (Id.) Ms. Jarrell diagnosed bipolar I disorder, most recent episode

9

depressed, severe without psychotic features; social phobia; generalized anxiety disorder; personality disorder, NOS; and assessed a GAF of 50. (Id.)

Ms. Jarrell also completed a form Medical Assessment of Ability to Do Work-Related Activities (Mental), on which she opined that Claimant had a poor ability to deal with work stresses, maintain attention and concentration, demonstrate reliability, and understand, remember, and carry out detailed and complex job instructions. (Tr. at 383-84.) She stated that Claimant's social anxiety interfered with his performance in a regular school setting to the extent that homebound instruction was provided. (Tr. at 383.) Ms. Jarrell further assessed fair ability to follow work rules, relate to co-workers, deal with public, use judgment with the public, interact with supervisors, function independently, behave in an emotionally stable manner, relate predictably in social situations, and understand, remember, and carry out simple job instructions. (Tr. at 383-84.) Finally, she assessed that Claimant had good ability to maintain personal appearance. (Tr. at 384.)

<u>Claimant's Challenges to the Commissioner's Decision</u>

Claimant alleges that the Commissioner's decision is not supported by substantial evidence because the ALJ erred in assessing Claimant's RFC. (Document No. 14 at 5-8.) Claimant asserts that at the time the state agency consultants reviewed the evidence, they had only two exhibits respecting Claimant's mental health: Dr. Syed's June 4, 2010, psychiatric evaluation report and Ms. McFadden's August 20, 2010, psychological evaluation. (Id. at 5.) He asserts that the only other mental RFC assessment of record was that of Teresa Jarrell, who evaluated Claimant on November 28, 2011, and had the benefit of all the evidence of record. (Id.) Additionally, she was the only mental health professional who administered psychological testing. (Id. at 6.) Claimant contends in view of the foregoing that the ALJ erred in rejecting Ms. Jarrell's opinion. (Id. at 6-8.) He asserts that Ms. Jarrell's opinion is consistent with her findings and the evidence of record. (Id. at 6-7.)

In response, the Commissioner asserts that the ALJ properly evaluated Ms. Jarrell's opinion

10

and determined that it was inconsistent with her own mental examination of Claimant, which revealed nothing more than relatively mild findings. (Document No. 15 at 12-13.) Her GAF of 50, therefore, was inconsistent with her mild findings. (Id. at 13.) Moreover, Ms. Jarrell's opinion was inconsistent with the other evidence of record. (Id. at 14-15.) The ALJ's decision to give her opinion little weight therefore, is supported by the substantial evidence of record. (Id.)

In reply, Claimant asserts that in discussing Ms. Jarrell's opinion, the ALJ was playing psychologist, when she lacked the expertise to criticize a report and testing based upon her personal interpretation. (Document No. 16 at 4.)

Claimant next alleges that the ALJ's decision is not supported by substantial evidence of record because the ALJ erred in assessing his pain and credibility. (Document No. 14 at 8-10.) Claimant asserts that in devising her RFC, the ALJ erred in relying exclusively on Claimant's purported allegations and found Claimant incredible based on his alleged activities of daily living. (Id. at 8.) In analyzing his activities, Claimant asserts that the ALJ relied too heavily on his written reports and not on his testimony. (Id. at 9-10.)

Claimant further alleges that the ALJ's decision is not supported by substantial evidence of record because the ALJ failed to consider the side effects from the medications he took to control his anger outbursts. (Document No. 14. at 10-11.) Claimant asserts that these medications made him feel sleepy and groggy. (Id.)

In response, the Commissioner asserts that the record showed that Claimant required only conservative and routine treatment for his mental impairments and that clinical findings were largely mild to moderate in nature. (Document No. 15 at 10.) The Commissioner asserts that Claimant's activities revealed a greater level of functioning than he claimed. (Id. at 11-12.) The Commissioner notes that Claimant was able to manage his personal care, watch television, clean his room, play video games, listen to music, use a computer, take out the trash, do dishes, help with laundry, and play the

11

guitar. (Id.) The Commissioner further notes that these activities were performed whether or not he took his medication. (Id. at 12.) Thus, the Commissioner contends that the alleged medication side effects played no part on these activities. (Id.) Additionally, the Commissioner notes that although Claimant alleged social difficulties, he reported that he visited friends two to three times per week and had a girlfriend for more than three years. (Id.) The Commissioner therefore contends that the ALJ properly assessed his credibility. (Id.)

In reply, Claimant contends that the ALJ cherrypicked certain activities such as Claimant having a girlfriend and visiting friends, and asserts that the ALJ had a duty to inquire of such activities at the administrative hearing. (Document No. 16 at 2-3.)

Finally, Claimant alleges that the ALJ's decision is not supported by substantial evidence of record because the ALJ failed to make a credibility finding regarding the testimony of Claimant's mother, Katrina Hartwell. (Document No. 14 at 11.) Claimant asserts, therefore, that the Court is expected to assume that her testimony is not credible. (Id.) In response, the Commissioner asserts that the Regulations do not require an explicit finding as to a lay witness' credibility. (Document No. 15 at 15-16.) The Commissioner asserts that because Ms. Hartwell's testimony was cumulative, it would not have changed the outcome of the case, and therefore, remand is inappropriate. (Id. at 16.) In reply, Claimant asserts that the ALJ had a duty to assess the credibility of Ms. Hartwell's testimony and that in any event her testimony was relevant and the ALJ's failure to assess it would not amount to harmless error. (Document No. 16 at 5-6.)

Analysis.

1. Opinion Evidence.

Claimant first alleges that the ALJ erred in rejecting Ms. Jarrell's opinion. (Document No. 14 at 5-8.) Every medical opinion received by the ALJ must be considered in accordance with the factors set forth in 20 C.F.R. §§ 404.1527(d) and 416.927(d) (2011). These factors include: (1) length of the

treatment relationship and frequency of evaluation, (2) nature and extent of the treatment relationship, (3) supportability, (4) consistency, (5) specialization, and (6) various other factors. Additionally, the Regulations state that the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." Id. §§ 404.1527(d)(2) and 416.927(d)(2).

Under §§ 404.1527(d)(1) and 416.927(d)(1), more weight is given to an examiner than to a non-examiner. Sections 404.1527(d)(2) and 416.927(d)(2) provide that more weight will be given to treating sources than to examining sources (and, of course, than to non-examining sources). Sections 404.1527(d)(2)(I) and 416.927(d)(2)(I) state that the longer a treating source treats a claimant, the more weight the source's opinion will be given. Under §§ 404.1527(d)(2)(ii) and 416.927(d)(2)(ii), the more knowledge a treating source has about a claimant's impairment, the more weight will be given to the source's opinion. Sections 404.1527(d)(3), (4) and (5) and 416.927(d)(3), (4), and (5) add the factors of supportability (the more evidence, especially medical signs and laboratory findings, in support of an opinion, the more weight will be given), consistency (the more consistent an opinion is with the evidence as a whole, the more weight will be given), and specialization (more weight given to an opinion by a specialist about issues in his/her area of specialty). Unless the ALJ gives controlling weight to a treating source's opinion, the ALJ must explain in the decision the weight given to the opinions of state agency medical or psychological consultants. 20 C.F.R. §§ 404.1527(f)(2)(ii) and 416.927(f)(2)(ii) (2011). The ALJ, however, is not bound by any findings made by state agency medical or psychological consultants and the ultimate determination of disability is reserved to the ALJ. Id. §§ 404.1527(f)(2)(I) and 416.927(f)(2)(I).

In evaluating the opinions of treating sources, the Commissioner generally must give more weight to the opinion of a treating physician because the physician is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. See 20 C.F.R. §§ 404.1527(d)(2),

416.927(d)(2) (2011). Nevertheless, a treating physician's opinion is afforded "controlling weight only if two conditions are met: (1) that it is supported by clinical and laboratory diagnostic techniques and (2) that it is not inconsistent with other substantial evidence." Ward v. Chater, 924 F. Supp. 53, 55 (W.D. Va. 1996); see also, 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2011). The opinion of a treating physician must be weighed against the record as a whole when determining eligibility for benefits. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2011). Ultimately, it is the responsibility of the Commissioner, not the court to review the case, make findings of fact, and resolve conflicts of evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). As noted above, however, the Court must not abdicate its duty to scrutinize the record as a whole to determine whether the Commissioner's conclusions are rational. Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

If the ALJ determines that a treating physician's opinion should not be afforded controlling weight, the ALJ must then analyze and weigh all the evidence of record, taking into account the factors listed in 20 C.F.R. §§ 404.1527 and 416.927(d)(2)-(6).

In the instant matter, the ALJ gave little weight to Ms. Jarrell's opinion. (Tr. at 21.) The ALJ summarized the opinion and concluded that it was unsupported by her own findings and from the record as a whole. (Id.) Additionally, the ALJ found that Ms. Jarrell relied heavily on Claimant's self-reported symptomatology and that her mild to moderate findings did not support her extreme limitations. (Id.) The undersigned finds that the ALJ's decision to give little weight to Ms. Jarrell's opinion is supported by the substantial evidence of record.

First, the ALJ found that Ms. Jarrell's opinion was unsupported by her mild to moderate findings. (Tr. at 21.) As summarized above, Ms. Jarrell noted essentially a normal mental status exam with the exception of a mildly anxious mood and restricted affect, mildly deficient remote memory, and moderately deficient concentration. (Tr. at 21, 379.) These were findings that were mild to moderate in nature, as the ALJ summarized. (Tr. at 21.) Though Ms. Jarrell administered psychological

14

testing, she concluded that the scores of the PAI were invalid without explanation. (Tr. at 21, 380.) The other test suggested that Claimant presented himself in a negative manner. (Id.) Nevertheless, Ms. Jarrell assessed a GAF of 50, suggestive of serious symptoms, and indicated that Claimant had poor and fair abilities to function in many job-related activities. (Tr. at 21, 383-84.) Thus, Ms. Jarrell's opinion appears to have been based on Claimant's subjective reports and is unsupported by her findings as the ALJ found.

Second, the ALJ found that Ms. Jarrell's opinion is inconsistent with the other substantial evidence of record. (Tr. at 21.) As the ALJ noted in her opinion, Claimant testified that he had not experienced an outburst of anger in recent years. (Tr. at 21.) His various mental evaluations demonstrate that he interacted well and established rapport easily. (Tr. at 21, 283, 286-87, 311, 340.) Furthermore, Claimant was able to maintain a relationship with a girlfriend for over three years and was visiting with friends and family. (Tr. at 21, 311.) Additionally, Ms. Jarrell's GAF was inconsistent with the GAF scores assessed throughout the record, which ranged in the moderate range as opposed to the severe range. (Tr. at 21, 283, 342, 350.) Thus, Ms. Jarrell's opinion was inconsistent with the other substantial evidence of record. Accordingly, the undersigned finds that the ALJ's decision to accord Ms. Jarrell's opinion little weight is supported by the substantial evidence of record.

2. Pain and Credibility.

Claimant next alleges that the ALJ erred in assessing her pain and credibility. (Document No. 14 at 8-10.) A two-step process is used to determine whether a claimant is disabled by pain or other symptoms. First, objective medical evidence must show the existence of a medical impairment that reasonably could be expected to produce the pain or symptoms alleged. 20 C.F.R. §§ 404.1529(b) and 416.929(b) (2011); SSR 96-7p; See also, Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996). If such an impairment is established, then the intensity and persistence of the pain or symptoms and the extent to which they affect a claimant's ability to work must be evaluated. Id. at 595. When a claimant

15

proves the existence of a medical condition that could cause the alleged pain or symptoms, "the claimant's subjective complaints [of pain] must be considered by the Secretary, and these complaints may not be rejected merely because the severity of pain cannot be proved by objective medical evidence." Mickles v. Shalala, 29 F.3d 918, 919 (4th Cir. 1994). Objective medical evidence of pain should be gathered and considered, but the absence of such evidence is not determinative.  Hyatt v. Sullivan, 899 F.2d 329, 337 (4th Cir. 1990). A claimant's symptoms, including pain, are considered to diminish her capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence.  20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4) (2011).  Additionally, the Regulations provide that:

> [w]e will consider all of the evidence presented, including information about your prior work record, your statements about your symptoms, evidence submitted by your treating, examining, or consulting physician or psychologist, and observations by our employees and other persons.  . . .  Factors relevant to your symptoms, such as pain, which we will consider include:
>
> > (i) Your daily activities;
> >
> > (ii) The location, duration, frequency, and intensity of your pain or other symptoms.
> >
> > (iii) Precipitating and aggravating factors;
> >
> > (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
> >
> > (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
> >
> > (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 or 20 minutes every hour, sleeping on a board, etc.); and
> >
> > (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3) (2011).

16

SSR 96-7p repeats the two-step regulatory provisions:

> First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques--that could reasonably be expected to produce the individual's pain or other symptoms. * * * If there is no medically determinable physical or mental impairment(s), or if there is a medically determinable physical or mental impairment(s) but the impairment(s) could not reasonably be expected to produce the individual's pain or other symptoms, the symptoms cannot be found to affect the individual's ability to do basic work activities.

> Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities.  For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

SSR 96-7p, 1996 WL 374186 (July 2, 1996). SSR 96-7p specifically requires consideration of the "type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms" in assessing the credibility of an individual's statements. Significantly, SSR 96-7p requires the adjudicator to engage in the credibility assessment as early as step two in the sequential analysis; i.e., the ALJ must consider the impact of the symptoms on a claimant's ability to function along with the objective medical and other evidence in determining whether the claimant's impairment is "severe" within the meaning of the Regulations.  A "severe" impairment is one which significantly limits the physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c) and 416.920(c).

Craig and SSR 96-7p provide that although an ALJ may look for objective medical evidence of an underlying impairment capable of causing the type of pain alleged, the ALJ is not to reject a claimant's allegations solely because there is no objective medical evidence of the pain itself. Craig,

76 F.3d at 585, 594; SSR 96-7p ("the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record"). For example, the allegations of a person who has a condition capable of causing pain may not be rejected simply because there is no evidence of "reduced joint motion, muscle spasms, deteriorating tissues [or] redness" to corroborate the extent of the pain. Id. at 595. Nevertheless, Craig does not prevent an ALJ from considering the lack of objective evidence of the pain or the lack of other corroborating evidence as factors in his decision. The only analysis which Craig prohibits is one in which the ALJ rejects allegations of pain solely because the pain itself is not supported by objective medical evidence.

In view of error it found in the ALJ's pain analysis, the Craig Court remanded, stating its reasoning as follows:

> [T]he ALJ did not expressly consider the threshold question of whether Craig had demonstrated by objective medical evidence an impairment capable of causing the degree and type of pain she alleges. Instead, the ALJ proceeded directly to considering the credibility of her subjective allegations of pain. . . . Accordingly, we remand to the ALJ to determine whether Craig has an objectively identifiable medical impairment that could reasonably cause the pain of which she complains. If the ALJ concludes that she does, then, and only, then, should it undertake an assessment into the credibility of Craig's subjective claims of pain.

Craig, 76 F.3d at 596. Relying upon this language in Craig, this Court remanded in Hill v. Commissioner of Social Security, 49 F.Supp.2d 865, 869 (S.D. W.Va. 1999) (Hallinan, J.), for consideration of the threshold issue in the pain analysis over the Commissioner's contention that it would be a waste of judicial and administrative resources because Mr. Hill would still be found not disabled. Judge Hallinan stated as follows:

> For the Court to make a determination when reviewing whether the ALJ's decision is supported by substantial evidence, the Court expects those below to conduct a full and intensive review of the record. Justice and fairness demands nothing less. To say that the results would be the same upon a second, more comprehensive review and explanation of the record, and therefore should not be done at all, would be to deny the Claimant his right to a fair decision, and in addition, deny the Court of a fully

18

developed record of review.

Hill, 49 F.Supp.2d at 870. In Arnold v. Barnhart, Civil Action No. 1:04-0422 (S.D. W.Va. Sept. 29, 2005), this Court further held that Craig mandates "that an ALJ must make an *explicit* determination that a claimant has or has not proven an underlying medical impairment that could cause the pain alleged by the claimant." Id. at 11.

> [T]he ALJ's failure to expressly reach a conclusion regarding the first part of the pain disability test, the threshold question of whether a claimant has "an underlying medical impairment that could reasonably be capable of causing the pain alleged," constitutes a failure to apply the correct legal standard in determining that a claimant is not disabled by pain.

Id. at 14. See also Bradley v. Barnhart, 463 F.Supp.2d 577, 581 - 582 (S.D. W.Va. 2006) (J. Copenhaver) (remanding for the ALJ's failure to consider the threshold question of Craig prior to considering the credibility of her subjective allegations); Lester v. Astrue, Civil Action No. 5:10-00380 (S.D. W.Va. Sept. 13, 2011) (J. Berger) (remanding for the ALJ's failure to make an explicit threshold finding stating that the "Court finds a more formulaic interpretation of *Craig*, as presented in *Bradley* and *Arnold*, is best suited to protect the judicial review of an ALJ's decision on the two-step pain and credibility assessment.").

The ALJ noted the requirements of the applicable law and Regulations with regard to assessing pain, symptoms, and credibility. (Tr. at 15-16.) The ALJ found at the first step of the analysis that Claimant's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (Tr. at 16.) Thus, the ALJ made an adequate threshold finding and proceeded to consider the intensity and persistence of Claimant's alleged symptoms and the extent to which they affected Claimant's ability to work. (Tr. at 16-21.) At the second step of the analysis, the ALJ concluded that "the [C]laimant's statements concerning the intensity, persistence and limiting effects of these symptoms, however, are not credible to the extent they are inconsistent with the above residual

19

functional capacity assessment." (Tr. at 16.)

In assessing Claimant's pain and credibility the ALJ summarized Claimant's testimony, including his statements that his medication made him drowsy but that it helped him to control himself. (Tr. at 16.) The ALJ acknowledged Claimant's testimony that he spent the day in his room watching television, reading, playing video games, and writing. (Id.) Claimant additionally testified that he took out the trash, cleaned his room, placed dishes in the dishwasher, and kept an eye on the wood stove. (Id.) Claimant takes issue with the ALJ's reliance on the fact that he played video games because Claimant later testified when questioned by his attorney that he did not play video games on a regular bases because everything bores him. (Tr. at 39.) The same applied to his guitar; he could not maintain interest in playing it on a regular basis. (Id.) Thus, these activities may not have been performed on a daily basis. Nevertheless, Claimant performed other activities on a continuing basis. Moreover, Claimant indicated to his medical providers that he had a girlfriend for over three years and visited family and friends. It is Claimant's ability to maintain these relationships and perform these activities, combined with the positive clinical findings as outlined above, that support the ALJ's finding that Claimant's symptoms were not as severe as alleged.

Additionally, in assessing Claimant's credibility, the ALJ considered the side effects of Claimant's medications. (Tr. at 20.) The ALJ noted Claimant's testimony that his medications made him sleepy and groggy and that treatment notes reflected similar complaints. (Tr. at 16, 20.) Despite such effects, the ALJ found that Claimant was able to participate in his activities of daily living and maintain his relationships. (Tr. at 20.) The ALJ, therefore, concluded that the medication side effects contributed to problems with Claimant's concentration and limited him to simple, routine, repetitive, and unskilled work. (Id.) Claimant testified that his anger outbursts were controlled by the medication and that he had not experienced such an outburst in quite some time. Thus, as the ALJ found, Claimant

was able to function with the assessed limitations and continue to realize the benefit of the medications.

Accordingly, in view of the foregoing, the undersigned finds that the ALJ considered Claimant's pain and credibility in accordance with the Regulations and that the ALJ's decision is supported by substantial evidence.

3. Witness Credibility.

Finally, Claimant alleges that the ALJ erred in assessing the credibility of Ms. Hartwell. (Document No. 14 at 11.) The Regulations provide that evidence from other sources may be used to show the severity of a claimant's impairment and may come from "[o]ther non-medical sources (for example, spouses, parents and other care-givers, siblings, other relatives, friends, neighbors, and clergy)." 20 C.F.R. §§ 404.1513(d)(4) and 416.913(d)(4) (2011). The ALJ acknowledged and summarized Ms. Hartwell's testimony, but failed to assess the credibility of her testimony as Claimant alleges. The undersigned notes, however, that Ms. Hartwell's testimony consisted of statements as to Claimant's history of behavioral problems, that Claimant felt better when he took his medication and accepted help, and that he presently was not experiencing the anger outbursts that he once did. (Tr. at 16, 42-47.) Essentially, her testimony was cumulative of what Claimant stated. Thus, it is apparent that in discrediting Claimant's testimony, the ALJ also discredited Ms. Hartwell's testimony. See e.g., Sifers v. Barnhart, 2005 WL 4122736, * 9 (W.D. Va. June 1, 2005) (citing Lorenzen v. Chater, 71 F.3d 316, 319 (8th Cir. 1995)(finding that "although the ALJ failed to list specific reasons for discrediting the testimony of Carol Bennett, it is evident that most of her testimony concerning Lorenzen's capabilities was discredited by the same evidence that discredits Lorenzen's own testimony concerning

his limitations."); Carlson v. Shalala, 999 F.2d 180, 181 (7th Cir. 1993)(per curiam)).[2] The undersigned

therefore, finds no error in the ALJ's failure to make an explicit finding as to the credibility of Ms.

Hartwell and that the ALJ's decision is supported by substantial evidence.

For the reasons set forth above, it is hereby respectfully **PROPOSED** that the District Court

confirm and accept the foregoing findings and **RECOMMENDED** that the District Court **DENY** the

Plaintiff's Motion for Judgment on the Pleadings (Document No. 14.), **GRANT** the Defendant's

Motion for Judgment on the Pleadings (Document No. 15.), **AFFIRM** the final decision of the

Commissioner, and **DISMISS** this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**,

---

[2] In *Sifers*, the Western District Court of Virginia held that an ALJ's failure to evaluate specifically the credibility of Claimant's mother's and daughters' testimony was not error where the testimony was "essentially the same as plaintiff's own." *Id.* In *Carlson*, the Seventh Circuit Court of Appeals provided the following analysis in determining whether it is error for the ALJ not to address specifically a witness's testimony:

> We have repeatedly stated that the ALJ need not evaluate in writing every piece of testimony and evidence submitted. *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985); *Zblewski v. Schweiker*, 732 F.2d 75, 79 (7th Cir. 1984). What we require is that the ALJ sufficiently articulate his assessment of the evidence to "assure us that the ALJ considered the important evidence . . . [and to enable] us to trace the path of the ALJ's reasoning." *Stephens*, 766 F.2d at 287. If the ALJ were to ignore an entire line of evidence, that would fall below the minimal level of articulation required. *Zblewski*, 732 F.2d at 78-79. But this is not such a case. The ALJ explicitly addressed Carlson's testimony concerning his pain and daily activities. Mrs. Carlson's testimony was essentially redundant. This is not like other cases where, because the ALJ failed to consider an entire line of evidence, we concluded that he provided insufficient reasons. *See Young v. Secretary of Health and Human Services*, 957 F.2d 386, 392 (7th Cir. 1992) (failure to discuss claimant's testimony, his wife's affidavits, or the reports of three doctors); *Stein v. Sullivan*, 892 F.2d 43, 47 (7th Cir. 1989) (failure to discuss any of the relevant medical evidence from claimant's treating physician); *Halvorsen v. Heckler*, 743 F.2d 1221, 1226 (7th Cir. 1984) (failure to discuss claimant's uncontradicted testimony). The ALJ did not err by failing to disclose Mrs. Carlson's testimony explicitly.

*Carlson*, 999 F.2d. at 181.

and a copy will be submitted to the Honorable David A. Faber, Senior United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have three days (mailing/service) and then fourteen days (filing of objections) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155, 106 S.Ct. 466, 475, 88 L.Ed.2d 435 (1985), reh'g denied, 474 U.S. 1111, 106 S.Ct. 899, 88 L.Ed.2d 933 (1986); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.), cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.Ed.2d 352 (1984). Copies of such objections shall be served on opposing parties, Judge Faber, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to send a copy of the same to counsel of record.

Date: March 4, 2014.

R. Clarke VanDervort
United States Magistrate Judge